IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JAMES MORRIS                                                                                              PLAINTIFF

V.                                  CASE NO. 1:14-cv-00145-JTK

CAROLYN W. COLVIN, *Acting Commissioner,*                              DEFENDANT
Social Security Administration

## MEMORANDUM AND ORDER

Plaintiff James Morris filed this appeal from a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). After reviewing the administrative record and the arguments of the parties, the Court finds that substantial evidence supports the Commissioner's decision.

### I.      PROCEDURAL HISTORY

Mr. Morris protectively filed his applications for DIB and SSI on September 19, 2011. (R. at 110.) He alleged a disability onset date of May 31, 2011. (R. at 110.) He alleged complications from depression and arthritis. (R. at 301.) The Social Security Administration denied Mr. Morris's claims at the initial and reconsideration levels. (R. at 120.) On April 26, 2013, an Administrative Law Judge ("ALJ") held a hearing on this matter. (R. at 33.) On June 6, 2013, the ALJ issued an unfavorable decision, denying Mr. Morris's claims. (R. at 40.)

On March 6, 2014, the Appeals Council granted Mr. Morris's request for review and sent the case to a different ALJ for further proceedings. (R. at 125.) On August 7, 2014, the new ALJ held a hearing on this matter. (R. at 53.) On September 5, 2014, the ALJ issued an

unfavorable decision, denying Mr. Morris's claims. (R. at 7.) On November 7, 2014, the Appeals Council denied Mr. Morris's request for review. (R. at 1.)

On November 21, 2014, Mr. Morris filed a complaint against the Commissioner, appealing the ALJ's denial of DIB and SSI. (Compl. 1, ECF No. 2.) On December 29, 2014, the district judge reassigned the case to the Court based on the parties' consent. (Consent 1, ECF No. 4.) Both parties have submitted briefs for the Court to consider. (Pl.'s Br., ECF No. 13; Def.'s Br., ECF No. 14.)

## II. ADMINISTRATIVE PROCEEDINGS

Mr. Morris was forty-three years old at the time of the second administrative hearing and had received his GED. (R. at 58.) He had past relevant work as a bench press operator, dishwasher, part counter, sander, and transferring material to the cooking area. (R. at 97.) The ALJ applied the five-step sequential evaluation process to Mr. Morris's claims.[1] (R. at 11.) The ALJ found that Mr. Morris satisfied the first step because he had not engaged in substantial gainful activity. (R. at 12.) At step two, the ALJ found that Mr. Morris suffered from the severe medical impairments of an adjustment disorder with mixed anxiety and depressed mood, depressive disorder, anxiety disorder, panic disorder, and dependent personality traits. (R. at 12.) At step three, the ALJ found that Mr. Morris did not have an

---

[1]The five part test asks whether the claimant: (1) is currently employed; (2) severely impaired; (3) has an impairment or combination of impairments that meet or approximate a listed impairment; (4) can perform past relevant work; and if not, (5) can perform any other kind of work. Through step four of this analysis, the claimant has the burden of showing that he is disabled. Only after the analysis reaches step five does the burden shift to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *Steed v. Astrue*, 524 F.3d 872, 875 n. 3 (8th Cir. 2008).

impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.) Before proceeding to step four, the ALJ found that Mr. Morris had a residual functional capacity ("RFC") to perform unskilled work at all exertional levels.[2] (R. at 17.) In making the RFC determination, the ALJ found that Mr. Morris was not credible regarding the persistence and limiting effects of his impairments' symptoms. (R. at 18-19.) At step four, the ALJ found that Mr. Morris was capable of performing his past relevant work as a bench press operator and a dishwasher. (R. at 21.) Therefore, the ALJ found that Mr. Morris was not disabled. (R. at 22.)

### III.   STANDARD OF REVIEW

The Court's limited function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Cox v. Apfel*, 160 F.3d 1203, 1206-07 (8th Cir. 1998) (citing *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997)). The Commissioner's decision cannot be reversed merely because substantial evidence would have supported an opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). However, "[t]he substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Gavin v. Heckler*, 811 F.2d 1195,

---

[2] The ALJ defined unskilled work as "work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, involves few variables, requires little judgment, and the supervision required is simple, direct, and concrete." (R. at 17.)

3

1199 (8th Cir. 1987). "'Substantial evidence on the record as a whole' . . . requires a more scrutinizing analysis." *Id.* (quoting *Smith v. Heckler*, 735 F.2d 312, 315 (8th Cir. 1984)). "In reviewing the administrative decision, '[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

## IV.    DISCUSSION

Mr. Morris argues that the Commissioner's decision is not supported by substantial evidence. (Pl.'s Br.2, ECF No. 13.) Specifically, Mr. Morris alleges that substantial evidence does not support the ALJ's RFC assessment regarding his (a) physical limitations and (b) mental limitations. (*Id.* at 15.) The Commissioner argues that substantial evidence supports the ALJ's decision. (Def.'s Br. 3, ECF No. 14.)

It is the claimant's burden to prove his RFC. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *See* Social Security Ruling 96-8p. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of claimant's ability to function in the workplace." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (internal citations omitted). Although an RFC is a medical determination, the ALJ should rely not only on medical evidence but on all relevant, credible evidence. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

### A.    PHYSICAL LIMITATIONS

Mr. Morris argues that substantial evidence does not support the ALJ's decision that

he is capable of performing work at all exertional levels. (Pl.'s Br. 15, ECF No. 13.) Specifically, he argues that he has chronic pain from an intervertebral disc disorder with myelopathy in the cervical region, hepatitis C, fatigue and arthralgias from liver disease. (*Id.*). The Commissioner responds that the medical records are inconsistent with Mr. Morris's claim of "physical impairments that would impose exertional limitations on his ability to work." (Def.'s Br. 5, ECF No. 14.)

Substantial evidence supports the ALJ's conclusion that Mr. Morris's chronic pain from an intervertebral disc disorder with myelopathy in the cervical region does not impose any exertional limitations on his ability to work. Mr. Morris reported in his pain questionnaire that he has "near constant pain in his neck . . . ." (R. at 18 (citing Ex. 11E)). Michael Spataro, M.D., noted that Mr. Morris's neck "is supple without tenderness or thyroid gland prominence. Strong neck movement is noted with normal shrug motion." (R. at 451.) Mahmood Ahmad, M.D., submitted a "Verification of Disability," in which he checked the box that says that Mr. Morris "has a physical, mental, or emotional impairment that is expected to be of long continued and indefinite duration, substantially impedes his or her ability to live independently, and is of a nature that such ability could be improved by more suitable housing conditions." (R. at 20 (citing Ex. 18F)). The ALJ placed limited weight on Dr. Ahmad's opinion because it did not specify any quantifiable limitations. An ALJ may discount physicians' opinions that are not justified by objective evidence. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). Overall, there is substantial evidence to support the ALJ's determination that Mr. Morris's chronic pain from an invertebral disc disorder with myelopathy in the cervical region does not

5

impose any exertional limitations on his ability to work.

Substantial evidence also supports the ALJ's determination that Mr. Morris's hepatitis C does not impose any exertional restrictions on his ability to work. At the first administrative hearing, Mr. Morris testified that he takes Selenium for his hepatitis. (R. at 39.) However, the record shows that he has not been prescribed any drugs for his hepatitis. At the second administrative hearing, the ALJ noted that no doctor diagnosed Mr. Morris with having hepatitis, but only that he tested positive for the virus. (R. at 84.) Mr. Morris's attorney also stated that he "hasn't been diagnosed." (R. at 99.) The record supports the ALJ's conclusion that Mr. Morris carries the hepatitis C virus but does not have hepatitis C.[3] (R. at 555.) Therefore, substantial evidence supports the ALJ's determination that Mr. Morris's hepatitis C does not impose any exertional restrictions on his ability to work.

Substantial evidence supports the ALJ's determination that Mr. Morris's fatigue does not impose any exertional restrictions on his ability to work. Mr. Morris did not claim fatigue as a disabling condition, nor did he mention it at either administrative hearing. On December 5, 2011, Dr. Spataro diagnosed Mr. Morris with chronic fatigue with mild night sweats. (R. at 452.) However, he only placed "mild to moderate limitations to sit, walk, and stand for a full workday," which is consistent with the ALJ's RFC assessment. (R. at 452.) On October 29, 2012, Jaime Whitehead, APN, noted that Mr. Morris has "malaise and fatigue." (R. at 560.) On February 19, 2014, Jeffrey Raines, M.D., diagnosed Mr. Morris with insomnia during a

---

[3]Sherrie Harrell, APRN, noted that Mr. Morris has "chronic hepatitis C." (R. at 747.) However, it does not appear that she tested him for hepatitis C, but rather relied on Mr. Morris's word. There is no objective proof in her medical statement that Mr. Morris has hepatitis C.

psychiatric evaluation. (R. at 581.) Ms. Harrell also mentioned Mr. Morris's fatigue in her notes from his August 2014 appointment. (R. at 747.)

Although the ALJ did not mention fatigue directly in his opinion, he noted that Mr. Morris's reported activities of daily living do not support a finding of disability. (R. at 19.) Specifically, in November 2011, Mr. Morris reported that he "prepares meals, cleans, mows, does laundry, does not drive because he has no license, shops for food, is able to handle money, listens to music, enjoys church, spends time with others, does not need someone to accompany him, and does not have problems getting along with family, friends, neighbors or others." (R. at 19.) In April 2012, he reported that he does light housework and drives with no license. (R. at 19.) He also shops and prepares meals. (R. at 19.) At the second administrative hearing, he testified that he takes care of his disabled girlfriend. (R. at 19.) Such activities of daily living are inconsistent with the assertion that Mr. Morris's fatigue is disabling. *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009). Therefore, substantial evidence supports the ALJ's finding that Mr. Morris's fatigue does not impose exertional limitations on his ability to work.

Lastly, substantial evidence supports the ALJ's determination that Mr. Morris's arthralgias from liver disease does not impose exertional restrictions on his ability to work. Ms. Harrell was the only person to mention any arthralgias from liver disease. (R. at 745.) However, she also wrote that there was "[n]o liver biopsy." (R. at 745.) It does not appear that this diagnosis was based on any objective evidence–only Mr. Morris's subjective complaints. Additionally, the other physicians to test Mr. Morris's liver found the results unremarkable.

7

(R. at 451 (finding no jaundice or stigmata for liver disease); 620 ("Liver: non-tender and no hepatomegaly"); 647 ("Liver is grossly unremarkable. Normal in size, shape, and configuration. There are no seen hepatic masses. no dilated bile ducts identified."). Since objective evidence does not support a claim of arthralgias from liver disease, substantial evidence supports the ALJ's determination that this impairment does not limit Mr. Morris's ability to work.

Mr. Morris argues that his strong pain medications of oxycodone, hydrocodone, and lortab, are objective evidence that he has disabling pain. (Pl.'s Br. 19, ECF No. 13.) He cites *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) to support his claim. In *Cox*, the Eighth Circuit reversed the district court because the claimant's physician found that she was capable of work only after reducing her level of morphine she was receiving from a morphine pump, but the claimant could not cut down her level of morphine because she became dependant on it. *Id.* at 1208. Here, no doctor suggested that Mr. Morris should cut down on his pain medications, and it appears that Mr. Morris is responding well to the medication. The record supports the ALJ's finding that any side effects from taking his medications "would not impose any additional work related restrictions." (R. at 19.) Therefore, substantial evidence supports the ALJ's RFC assessment regarding Mr. Morris's physical limitations.

Mr. Morris argues that the ALJ improperly preferred the opinions of the non-examining state agency doctors over the findings and opinions of his treating doctors. (Pl.'s Br. 20, ECF No. 13.) As noted above, the ALJ properly discounted some of the opinions of Mr. Morris's treating physicians. Additionally, the ALJ is permitted to give significant weight to state

agency doctors if their opinions are supported by the record. *See Wagner v. Astrue*, 499 F.3d 842, 847-49 (8th Cir. 2007) (affirming the Commissioner, who placed greater weight on the state agency physicians than the treating physicians). The record shows that the ALJ examined the entire record when deciding how much weight to place on each medical opinion. The ALJ did not commit legal error by preferring the opinions of the state agency doctors over the opinions of the treating physicians.

    B.    MENTAL LIMITATIONS

Regarding his mental RFC, Mr. Morris argues (1) the ALJ's RFC assessment is inconsistent with his diagnosis of a major depressive disorder (recurrent and severe) by Eloise Weeks, M.D., and (2) the ALJ committed legal error by discounting Mr. Morris's Global Assessment of Functioning (GAF) score. (Pl.'s Br. 21.)

On July 26, 2014, Mr. Morris presented himself to the St. Bernards Emergency Department "where he stated he had been hearing voices for 6 months and had thoughts of suicide today. He also complains of significant mental illness history and ringing in his ears." (R. at 714.) He was admitted to the St. Bernards Hospital. (R. at 714.) On July 29, 2014, Allison L. Russell, APN, noted that Mr. Morris stated that he "feels hospitalization has been helpful. . . . He is hopeful that Zoloft will work well for him–he denies any adverse effects at this time. . . . His behaviors have been appropriate on the unit." (R. at 717.) On July 30, 2014, Dr. Weeks stated that Mr. Morris was tolerating his medication regimen, and he poses "no foreseeable threat to self or others at this time." (R. at 718.) Since Mr. Morris's depression can be treated with medication, it "cannot be considered disabling." *Wildman v. Astrue*, 596 F.3d

959, 965 (8th Cir. 2010) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)). Therefore, the depressive disorder is not disabling based on Dr. Weeks's notes.

Additionally, the ALJ properly considered Mr. Morris's GAF scores. The ALJ found that Mr. Morris had GAF scores "between 19 and 60 . . . and further acknowledges that these scores are sometimes used to measure functional abilities." (R. at 21.) An ALJ must consider all of a claimant's GAF scores, including the lowest ones. *Pate-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009). However, "the Commissioner has declined to endorse the GAF score for use in the Social Security and [Supplemental Security Income] disability programs, and has indicated that GAF scores have no 'direct correlation to the severity requirements of the metal disorder listings.'" *Jones v. Astrue*, 619 F.3d 963, 973-74 (8th Cir. 2010) (quoting *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 415 (6th Cir. 2006)). An ALJ "may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it. *Id.* at 974. Here, the ALJ gave greater weight to the medical evidence and testimony rather than Mr. Morris's GAF scores. (R. at 21.) The record shows that the ALJ considered Mr. Morris's entire medical history when considering his mental limitations. Substantial evidence supports the ALJ's RFC assessment regarding his mental limitations.

## V.    CONCLUSION

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record that contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir.

1992).

The Court has reviewed the entire record and concludes there is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error. Therefore, the final decision of the Commissioner is affirmed.

SO ORDERED this 16th day of October, 2015.

_____
UNITED STATES MAGISTRATE JUDGE